UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE LYNN RIEGER,

    *Plaintiff*,

v.                                                          CASE NO. 12-CV-13145

COMMISSIONER OF                   DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,                     MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff was 32 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 36, 107.) Plaintiff's employment history includes work as an assembler for eight years, a cashier for four years, and a food delivery person and sorter for less than one year each. (Tr. at 134.) Plaintiff filed the instant claims on May 14, 2009, alleging that she became unable to work on January 1, 2009. (Tr. at 105, 107.) The claims were denied at the initial administrative stage. (Tr. at 51, 52.) In denying Plaintiff's claims, the Commissioner considered dysthymia and substance dependence as possible bases for disability. (*Id.*) On August 20, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the applications for benefits *de novo*. (Tr. at 16-35, 36-50.) In a decision dated October 19, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 31.) Plaintiff requested a review of this decision on December 16, 2010. (Tr. at 14-15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 18, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On July 18, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that she had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. at 21.) At step two, the ALJ found that Plaintiff's depression and polysubstance abuse were "severe" within the meaning of the second sequential step. (Tr. at 21-23.) At step three, the

6

ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 23-24.) At step four, the ALJ found that Plaintiff could perform her past relevant work as an assembler. (Tr. at 29-30.) Alternatively, at step five, the ALJ found that Plaintiff retains the residual functional capacity to perform a full range of simple, unskilled work at all exertional levels. (Tr. at 24-29.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 30-31.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff lost her job in 2007 due to heroin and cocaine use. (Tr. at 230.) On January 23, 2009, it was noted that Plaintiff had given birth on January 5, 2009, "and the baby's merconium tested positive for cocaine." (Tr. at 234.) Plaintiff reported being "depressed off and on for 'a long time.'" (*Id.*) It was also noted that Plaintiff "admits to use once following delivery of her baby despite CPS [Child protective Services] involvement and fears of losing her daughter." (*Id.*)

Plaintiff was transported from the Macomb County Jail to the emergency room on February 13, 2007, because of "jaundice," vomiting, dehydration and a history of drug abuse and Hepatitis B. (Tr. at 189.)

On August 27, 2007, Edward J. Mike, Ph.D., wrote a letter indicating that he had treated Plaintiff for one month and that she had "

> made impressive changes in her determination to turn her life around. . . . She will continue to need to utilize every resource at her disposal to maintain a secure buffer against relapse and she will need the opportunity to find suitable employment so she can discover her independent strengths and become self-reliant and responsible. She has qualifications to be a reliable employee. She appears bright and good with people and she is willing to do whatever it takes to build a platform for her restored identity.

(Tr. at 246.) On November 13, 2007, Dr. Mike completed an "Alcohol and Other Drug Assessment Report" wherein he concluded that Plaintiff had no limitations in mental status, personal behavior (other than low self-esteem), anticipated job-seeking behavior (other than a "little" low tolerance for rejection), nor did she have any anticipated behavior problems in the work environment as long as she "is drug-free." (Tr. at 251.) Dr. Mike rated Plaintiff's functioning levels as average or above average except for self-esteem and acceptance of criticism. (Tr. at 252.) Dr. Mike rated Plaintiff's concentration and memory above average, and her attention, learning and problem solving as excellent. (*Id.*)

On March 16, 2009, Dr. Mike indicated that he had kept in contact with Plaintiff through e-mail and the telephone and that he continued to be "impressed" with Plaintiff and "her grit and true commitment to lead an upright life and fulfill her potential as a citizen" and that he believed that "she can be a very capable and loving mother and a person of value." (Tr. at 248.)

On June 4, 2009, Plaintiff was assessed at Oakland Family Services where Plaintiff reported that she was "[c]urrently looking for a job. Working for a woman at her church/meetings." (Tr. at 228.) It was noted that Plaintiff "scored high on recognition, very low on ambivalence, and high on taking steps on the SOCRATES assessment for drug abuse" and that Plaintiff appeared "to present in the preparation/action stage" for working on her cocaine dependence issues. (*Id.*) Plaintiff "reported symptoms of anxiety and a prescription of Xanax by her doctor but does not appear to meet criteria for an anxiety disorder at this time." (*Id.*)

On August 4, 2009, it was noted that Plaintiff "used crack this past week and is at risk of losing her parental rights. She reports her drug use last week as a relapse . . . ." (Tr. at 358.)

On February 2, 2010, Plaintiff was given a Mental Status Examination by a therapist at Woodward Counseling who assessed Plaintiff as normal with regard to motor activity, speech,

8

memory, interview behavior, intellect, judgment, orientation, affect, thought content, thought processes and self concept. (Tr. at 344.) It was noted that Plaintiff was on anti-depressants and that she denied "any disabilities or other medical concerns." (Tr. at 346.)

A Psychiatric Review Technique completed on July 30, 2009, by J. Gange, Ph.D., concluded that there were no severe impairments but diagnosed affective disorders, i.e. dysthymia, and substance addiction disorders. (Tr. at 254, 257.) Plaintiff was found to be mildly limited in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace. (Tr. at 264.)

Plaintiff indicated in her daily activity report that she manages her own personal care, uses post-it notes to remind herself of things to do, prepares simple meals once or twice daily for about one-half hour at a time, does light cleaning every three days or so, does laundry once a week, lives in an apartment so she does not need to do yard work, goes outside five times per week, walks, rides in a car (but does not own a car), shops in stores every two weeks for a "couple hours[,]" manages her own finances, reads, watches television and movies, socializes with family and friends three of four times per week, and attends church and meetings. (Tr. at 150-53.)

Plaintiff testified at the administrative hearing that the last time she used cocaine was in March 2010 and that it was a "one time relapse." (Tr. at 41.) Plaintiff stated that she cannot work "[d]ue to joint pain and tiredness. I get extreme fatigue due to the lupus." (*Id.*) The ALJ noted that he didn't "have anything at all in this record" about lupus. (*Id.*) Plaintiff's counsel elicited testimony from Plaintiff regarding a Dr. Eldomshey's diagnosis of lupus in July 2009. (Tr. at 43.) Plaintiff indicated that she was attempting to regain custody of her second daughter by participating in the Grace program where she attends classes on Mondays, Tuesdays, and Thursdays all day, except for free time between 3:00 p.m. and 5:00 p.m., after which they eat

dinner. (Tr. at 45-46.) Plaintiff testified she also volunteers at the thrift store on Saturdays and Sundays from 9:00 a.m. to 5:00 p.m. each day. (Tr. at 46.)

  **F.**  **Analysis and Conclusions**

  **1.**  **Legal Standards**

The ALJ concluded that Plaintiff was capable of returning to her prior work as an assembler. The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. §§ 416.960(b), 404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As noted earlier, the ALJ determined in the alternative that Plaintiff retained the residual functional capacity to perform a full range of simple, unskilled work at all exertional levels. (Tr. at 24-29.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that: (1) "After acknowledging a paucity of record evidence with respect to plaintiff's lupus, the ALJ erred in not providing for further development of the record in that regard"(Doc. 11 at 8-10); and (2) "The ALJ's residual functional capacity assessment and the hypothetical he posed to the VE did not adequately address the impact of plaintiff's moderate limitations in maintaining concentration, persistence, and pace." (Doc. 11 at 10-12.)

### a.    Full and Fair Record

The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000

WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Since Plaintiff was represented by counsel, I suggest that there were no special circumstances placing a heightened duty on the ALJ to fully and fairly develop the record. Failure of Plaintiff's counsel to obtain and submit any evidence before or after the hearing does not place any burden on the ALJ to seek the same.

To the extent that Plaintiff actually seeks a sentence-six remand rather than a sentence-four remand, I suggest that Plaintiff cannot meet that standard either.

> Remands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence. Under sentence six, a district court, before making a final judgment, may order the Secretary to consider additional evidence because a party presents material evidence to the court that was not previously available. Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place.

*Faucher*, 17 F.3d at 175.[2] Since Plaintiff does not seek a judgment but rather seeks remand for "[m]ore development of this subject" of lupus (Doc. 11 at 12), Plaintiff may actually be seeking remand under sentence six. *Id.* ("a remand pursuant to sentence four of § 405(g) is a post-judgment remand," as opposed to a remand "pursuant to sentence six of § 405(g), [which] is a pre-judgment remand").

Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long

---

[2] Other courts have questioned whether a remand under sentence four may include the taking of additional evidence where the requirements of sentence six are not met. *See, e.g., Jones v. Astrue*, 650 F.3d 772, 776 (D.C. Cir. 2011) (collecting cases and noting that the Supreme Court has not ruled on the issue).

recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, the medical evidence Plaintiff would like to include apparently consists of Dr. Eldomshey's diagnosis of lupus in July 2009. (Tr. at 43.) This evidence existed at the time of the hearing and therefore is not new. I thus suggest that even if Plaintiff were seeking a remand under sentence six, the request should be denied.

### b.     RFC Analysis

I note at the outset that the Plaintiff accurately reports that the ALJ indicated Plaintiff had "moderate difficulties" "[w]ith regard to concentration, persistence or pace." (Tr. at 23) However, I also note that the only assessment of Plaintiff's abilities with regard to concentration, persistence

13

or pace, i.e., the Psychiatric Review Technique, concluded that Plaintiff was only mildly limited. (Tr. at 264.) In addition, Plaintiff was consistently evaluated as normal and without limitations in mental status, average or above average in functioning, and above average in concentration and memory, attention, learning and problem solving. (Tr. at 251-52, 344.) I therefore suggest that the record evidence would not support let alone require any moderate limitation in the hypothetical and that the ALJ's reference to moderate limitations may have been a scrivener's error.

However, even assuming that the ALJ's reference to moderate limitations was intentional, I suggest the RFC analysis was supported by substantial evidence. Plaintiff argues that the "ALJ's residual functional capacity assessment and the hypothetical he posed to the VE did not adequately address the impact of plaintiff's moderate limitations in maintaining concentration, persistence, and pace." (Doc. 11 at 10-12.) This argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted). Looking at the record as a whole, I suggest that the ALJ's findings are supported by substantial evidence.

In the instant case, the ALJ found that Plaintiff could perform a full range of simple, unskilled work at all exertional levels. (Tr. at 24-29.) As noted above, Plaintiff's mental capacity was consistently assessed as normal, average, or above average. (Tr. at 246, 251-52, 264, 344.) Plaintiff's treatment goals were to seek employment and become a self-reliant person. (Tr. at 228,

14

246.) In addition, Plaintiff testified that she was attending classes all day on Mondays, Tuesdays, and Thursdays and volunteering at a thrift store on Saturdays and Sundays from 9:00 a.m. to 5:00 p.m. (Tr. at 45-46.) Finally, there is no record evidence of any diagnosis or treatment for lupus, as noted by the ALJ in the hearing. (Tr. at 41.)

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to simple, unskilled work. *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (where physician finding moderate limitations in concentration, persistence and pace also concluded that the plaintiff was able to perform unskilled work, ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (although the plaintiff cited to moderate limitations noted in the assessment, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work).

15

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's additional statements that she manages her own personal care, uses post-it notes to remind herself of things to do, prepares simple meals once or twice daily for about one-half hour at a time, does light cleaning every three days or so, does laundry once a week, lives in an apartment so she does not need to do yard work, goes outside five times per week, walks, rides in a car (but does not own a car), shops in stores every two weeks for a "couple hours[,]" manages her own finances, reads, watches television and movies, socializes with family and friends three of four times per week, and attends church and meetings. (Tr. at 150-53.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                             s/ Charles E Binder  
                             CHARLES E. BINDER  
Dated: July 16, 2013                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: July 16, 2013                     By     s/Patricia T. Morris  
                                                   Law Clerk to Magistrate Judge Binder